## Westenberger et al. *versus* Reist et al.

Where a testator conveyed real estate to his daughter, a married woman, and to her heirs, and the assigns of her heirs, under and subject to a certain article of agreement bearing even date with the indenture, with clause of warranty and "subject as aforesaid;" and the husband and wife covenanted and agreed in the articles, that if the decease of the wife should take place and she should not leave lawful issue or issues, that would live to the age of twenty-one years, that in that case the premises shall then descend and come to the heirs of the father, and the indenture shall cease and become absolutely void. Held, that the daughter took a fee simple, dependent on the condition of leaving children, who should live to attain full age—and this having failed, her estate determined by her death, and a fee vested in the right heirs of the grantor.

ERROR to the Common Pleas of *Lebanon county*.

This was an ejectment by Abraham and Christian Reist *vs*. David and Henry Westenberger and Jacob Kreider, for two-fifths of a tract of land containing 112 acres 154 perches.

The land had been conveyed by a deed dated 30th day of May, 1809, between Abraham Reist, the elder, and Elizabeth his wife, of the one part, and their daughter, intermarried with Christian Bomberger, of the other part. It witnessed, that the said Abraham Reist and wife, for and in consideration of the sum of £2000, which sum, he (Reist) agrees shall be allowed unto his said daughter Barbara, in part of her share of his estate, and for the further sum of five shillings paid, by the said Barbara, do grant, &c. unto the said Barbara Bomberger, and to her heirs and the assigns of her heirs, a certain plantation, then in the county of Dauphin, composed of various pieces of land, containing in all above 812 acres—to have and to hold the same unto the said Barbara her heirs and the assigns of her heirs forever; under and subject to a certain article of agreement of the same date, executed by the said Reist, Bomberger and Barbara his wife; and at the close of the clause of warranty, are the words "nevertheless, subject as aforesaid."

On the deed is a receipt by Reist for five shillings of Barbara, in full for the consideration money within named, which is at present agreed upon to be paid.

The articles of agreement executed and delivered on the same day as the deed was, signed by Abraham Reist and Christian Bomberger and wife, witnessed, that the said Reist doth covenant and agree with Bomberger and wife to convey unto the said Barbara his daughter, and to her heirs, by indenture bearing even date herewith, a certain plantation, viz: the same land described in the deed, which premises the said Reist obligates himself to convey unto Barbara, for the consideration of two thousand pounds, which sum he agrees shall be allowed unto his said daughter as a part of her share of his estate.

[Westenberger et al. *v.* Reist et al.]

"And the said Christian Bomberger and Barbara his wife, for themselves, their heirs, executors, administrators, do covenant, promise and grant to and with the said Abraham Reist, his heirs, executors and administrators, by these presents, that if the decease of the said Barbara should take place, and she should not leave lawful issue or issues, that would live to the age of twenty-one years, that in that case the premises as hereinbefore mentioned, agreed upon to be conveyed to her, shall then descend and come to the heirs of her said father, Abraham Reist, or to their legal representatives, and that in such case the indenture by which the said premises are granted to the said Barbara, shall cease, determine, and become absolutely void to all intents and purposes whatsoever, but if otherwise, and she should have issue or issues as aforesaid, the said indenture shall be valid, and remain in full force and virtue."

In 1823 Bomberger and wife conveyed the premises to Phreaner, the deed expressing it to be for the consideration of five thousand dollars, *and also for the purpose of barring the estate tail* of which the said Barbara is seized in the lands and premises.

The deed was entered on the records of the court and recorded. Phreaner and wife in 1823, conveyed the property to Christian Bomberger (the husband) his heirs and assigns. This deed recorded on the 21st November, 1823. Barbara had issue, two children, the first born in 1813 or 1814, and lived a few weeks; the other born in May, 1816, and died in February, 1817.

Bomberger died in 1834, having first made his will, dated November 26, 1823, by which he directed this land to be sold after the death of his wife. The executors named in the will renounced, and letters of administration with the will annexed were issued to Jacob Kreider, one of the defendants. The widow, Barbara, died in November, 1848. The land was not sold by Kreider, the administrator.

Abraham Reist, sen. died prior to the 16th of March, 1813, when his will was proved, which was dated 17th August, 1810. He left issue six children, to wit: John, Nancy, Elizabeth, Abraham, Barbara, wife of Christian Bomberger, and Christain. His son Abraham, one of the plaintiffs in this suit, was appointed one of his executors, and to whom letters testamentary issued.

Abraham Reist, sen. by his will, says, "touching such worldly estate wherewith God has blessed me in this life, I give, devise and bequeath the same in the following manner," and then after disposing of his personal property and of some real estate, but making no mention of the lands in dispute, says, "otherwise what my children severally received of me in land, money, and other articles, I have considered that I have made an equal distribution among them, and shall be no further account or settlement be made of the same after my decease."

[Westenberger et al. *v.* Reist et al.]

The plaintiffs are two of the six children of Abraham Reist, deceased, and claim to recover two undivided fifth parts of the land conveyed by deed of the 30th May, 1809, and the defendant contends that they are not entitled to recover any part of the same.

The defendants, the Westenbergers, were the tenants of Kreider, who was administrator as before stated.

Pearson, J., charged the jury, *inter alia,* that the estate granted to Barbara Bomberger, was but an estate *for life*, with a fee simple to vest in her surviving heirs who should attain the age of twenty-one years, and a limitation over in fee simple to the right heirs of the grantor on failure on her part to comply with the condition, that is to leave heirs who should attain the age of twenty-one years. In the conveyance there are no proper words of procreation to create an estate tail. That the estate limited to her heirs on her death is a fee simple on condition, and the limitation over on failure of her leaving issue, who shall attain the age of twenty-one years, is express in favor of his own heirs, and is not in the nature of a reversion to them.

He instructed the jury that the plaintiffs are entitled to recover.

Defendants' counsel excepted to the opinion.

The jury found for plaintiffs two equal undivided fifths of the land.

Assignment of errors:

1. The court erred in the charge to the jury, in instructing them that the plaintiffs are entitled to recover two undivided fifth parts of the land conveyed by the deed of the 30th of May, 1809.

2. The court erred in not directing the verdict to be rendered in favor of the defendants.

The case was argued by *Levi Kline* and *J. M'Cormick,* for plaintiffs in error, defendants below.

The words as to Barbara having children, &c. are to be taken as a limitation over and not a condition. If the words in the agreement have any effect, they serve only to lessen the estate into a fee tail. If this be a fee simple, *a fee tail* cannot be limited upon it. If it were an estate tail, it was barred, and a fee simple vested in Christian Bomberger. If there be in a deed a clause repugnant to the grant, it is void; the office of the *habendum* is not to degrade a fee tail to a life estate, but to explain the grant: 1 *W. & S.* 380; 3 *Bacon* 158, 162; 2 *Black.* 298; *Shep. Touch.* 102; 30 *Law Lib.* 200; 4 *Cruise* 234; 4 *Kent* 130. If she had an estate for life with a fee simple to her heirs, then the rule in Shelly's case would execute this use and declare it to be an estate tail in her, Heilman *vs.* Bouslaugh; (see this case in this volume.)

*J. A. Fisher*, for defendants in error, contended that the grant in this case was an estate in fee simple upon *express condition subsequent*, to wit: That she should .die without having issue that attained to the age of twenty-one years.

The opinion of the court was delivered by

BELL, J.—As it is not to be questioned, so it is not denied by either of the parties, that in order to ascertain the terms of the conveyance made by Abraham Reist to his daughter Barbara, the deed of the 30th May, 1809, and the article of agreement executed on the same day, must be read as one instrument, together constituting the muniment of title, under which the litigants before us respectfully claim. If authority were required for so plain a proposition, it may be found in *Shep. Touch.* 242, 3 *Com. Dig.* Condition A., and our own cases of Hamilton *vs.* Elliott, 5 *S. & R.* 375; and Baer *vs.* Whistler, 7 *W.* 144. Upon these two papers then, thus treated and considered, the question arises, what estate Barbara took; whether a fee conditional, a fee tail, or, as the court below seems to have thought, an estate for life, with a contingent limitation to such of the children as should attain the age of twenty-one years.

To a mind unaccustomed to the critical niceties the common lawyer has been taught to exert in the construction of words and sentences, and looking only to the intention of the contracting parties, there would seem to be no room for hesitancy. Reading these documents in a spirit untrammelled by technical rule, and the refined and subtle reasoning of legal logic, there could be but one conclusion attained. And happily, in this instance, I think it clear, this conclusion is in harmony with that which the jurist referring to and acknowledging the authority of judicial precedent must arrive at.

By the words of the grant, the land in question is conveyed "to Barbara, her heirs and the assigns of her heirs, and to the only proper use and benefit of her, the said Barbara Bomberger, her heirs and the assigns of her heirs forever." Although from the peculiarity of the phraseology here used, in connection with the word "assigns," it might be argued some intention is discoverable to distinguish between the ancestress and her heirs, there is no room to dispute that the clause I have cited, standing alone, conferred on the first taker an indefeasible estate in fee simple. But immediately following is this qualification, "under and subject to a certain article of agreement, bearing even date with this present indenture, executed by the said Abraham Reist, Christian Bomberger, and Barbara his wife, the aforesaid Barbara Bomberger." This pointed reference to the simultaneous articles of agreement, as containing something which may qualify or restrain the generality of the grant, agreed upon by all the parties, in effect adopts

its language and conditions, or those of the grantor, whenever
from the context it is evident they should be referred to, as stipu-
lations emanating from him, and binding the grantee to the per-
formance of some essential act. For though a stipulation may
assume the form of a covenant undertaken by the grantee, yet if
the agreement be mutual, and it is compulsory on the feoffee or
donee to do or omit to do something which may confirm, enlarge
or defeat the estate before granted, it is in the nature of a condi-
tion; and this whether it be in the instrument creating the estate,
or indorsed upon it, or be found in some other deed, making a
portion of the mutual undertaking: 3 *Com. Dig.* condition A. 2;
2 *Co. Rep.* 71–6; 5 *Vin.* 45, pl. 2, 4, 5, 7, 9; *Shep. Touch.* 236–
7; 30 *Law Lib.* —; Whitchcot *vs.* Fox, 2 *Cro. Rep.* 398; Thomas
*vs.* Ward, 1 *Cro. Rep.* 202. Among the stipulations thus incor-
porated, as it were into the deed, is the following; "And the said
Christian Bomberger and Barbara his wife, for themselves, their
heirs, executors and administrators, do covenant, promise and
grant to and with the said Abraham Reist, his heirs, executors and
administrators, that if the decease of the said Barbara should take
place and she should not leave lawful issue or issues that would
live to the age of twenty-one years, that in that case the premises
as herein before mentioned agreed upon to be conveyed to her,
shall then descend and come to the heirs of her said father, Abra-
ham Reist, or to their legal representatives, and that in such case
the indenture by which the premises are granted to the said Bar-
bara, shall cease, determine and become absolutely void to all
intents and purposes whatsoever; but if otherwise, and she should
have issue or issues as aforesaid, the said indenture should be valid,
and remain in full force and virtue." This provision, though as-
suming the shape of a covenant on the part of Bomberger, and
his wife, may under the principles just adverted to, be treated as
a condition imposed by the grantor, if it contain apt words to
create a condition. In ascertaining the character to be ascribed
to it, we may refer also to that clause of the deed, "under and
subject to a certain article of agreement, bearing even date with
the present indenture" &c. These are the words of the grantor
himself, and according to Hamilton *vs.* Elliott, and Bear & Whist-
ler, are apt to create a condition, the nature of which is to be as-
certained by calling in the aid of the "article." But apart from
this, the clause I have cited from the article in itself so imports.
There are certain words which, of their own efficacy and force,
constitute a condition; as *sub conditioni, ita quod, and proviso
semper;* and it is said the latter words do so, though joined to
others, as provided always, and it is covenanted, "provided, and
it is agreed," and the like: 3 *Com. Dig. Condition A.* 2; *Co. Litt.*
sec. 329. So other words, as *quad si contingat*, make a condi-
tion, if they be assisted by a conclusion or expressed consequence,

as by a clause of re-entry, or that the estate shall cease, or be void, or that the feoffment shall be void; and stipulations of similar tendency, *Co. Litt. Sec.* 204; 1 *Roll.* 408, *l.* 50; 3 *Com. Dig. Ti. Condition;* 5 *Vi. Abr. Ti. Condition.*

Now, it is not to be doubted, the clause of the article was intended to operate in defeasance of the estate granted, and that it presents us with the characteristics necessary to endow it with the power of operation. Its opening words are equivalent. "If it should happen the said Barbara should die without issue," &c., and it closes with words of forfeiture, applicable only to the estate given, which, according to the Touchstone is one of the features of a condition: *Shep. Touch.* 30 *Law Lib.* 236, 7. Every legal requirement is thus satisfied, and as no question can be made of the intention to give Barbara an estate of inheritance, subject to be defeated upon the contingency of her dying without issue, who should live to attain the age of twenty-one years, a layman would be at a loss to understand why, on the happening of the contingency contemplated, the condition should not operate to put an end to the defeasible estate, and invest the fee in the right heirs of the grantor. The plaintiffs in error resist this conclusion, on the ground that the clause in question either restrains the legal operation of the words of inheritance used in the deed, or it does not. If the latter is the case, say they, it leaves the estate granted in all the plenitude of an unqualified gift in fee simple, as the terms of the deed, taken alone, import; if the former it reduces it to an estate tail, which having been barred, the heirs of the grantor can take nothing by force of the limitation over. It might be sufficient to answer that it works not a limitation upon the precedent estate, but a total destruction of it, since it provides that in the event indicated, the conveyance shall become absolutely void. But as the idea of an estate tail was much insisted on in argument, it may not be amiss shortly to notice it.

Much recondite learning has been expended on the question, when, in a conveyance after words of inheritance, the introduction of a limitation over to take effect on failure of the first taker, will reduce the estate given to a fee tail. Though it is settled no estate can arise from implication in a common law conveyance, it seems agreed prior words of grant may be explained, lessened, or qualified by subsequent terms, and thus language broad enough to confer a fee simple, may be much narrowed down by a subsequent expression to a fee tail. It is not my intention to discuss this somewhat intricate and perplexing subject. The learning relating to it, may be found collected in Preston on Estates, in the chapter treating of estates tail. It will suffice now to observe that to reduce the estate first given, the gift must be restrained, by the frame and context of the deed, to the heirs of the body of the donee, either by express words, or by something tantamount,

excluding every possibility that the donor or grantor may have had reference to general heirs. Thus it has been held, that a gift to A., and his heirs male, lawfully begotten, and for want of such issue, then over, conferred only a fee simple and not a fee tail, for want of words of appropriation or procreation, in the limitation over, since it was not ascertained by or upon what body the issue should be lawfully begotten, and all heirs are lawfully begotten: Abraham *vs.* Twigg, *Cro. El.* 478. But the want of an express direction in this particular, may be supplied by equipollent provisions, and the chief difficulty has been to ascertain what shall be deemed an equivalent. On this point, the most of the argument submitted for the plaintiffs in error was expended. It was insisted with much force, that the second estate being limited to those who must of necessity be the right heirs of Barbara, on her dying without children, the words used in the article, "should not leave lawful issue or issues," must be taken as referring to issue of her body, since her general heirs, the issue of others, are designated to take on the failure of her issue proper. And this view is not without authority to sustain it. But I am spared the necessity of considering its applicability here, by the conviction, that under no known principle can Barbara's estate be moulded into a fee tail. If the words had been simply, "should she not leave lawful issue," then over, without the express provision of defeasance, there might be some ground for saying she took in tail. But the direction is "should she die without issue that would live to the age of twenty-one years." Now, in the construction of a deed, the intention of the grantor, when legal and sufficiently expressed, is the governing principle: Means *vs.* Presbyterian Church, 3 *W. & S.* 303, unless it be overridden by some technical and unbending rule, for the sake of certainty and uniformity. I take it, therefore, the expression of the contingency in our articles is subject to the same construction, and will have the same operation as words of similar import found in a testamentary disposition. If so, perhaps, nothing is better settled than that they are not creative of an estate tail. The distinction is between words that import an indefinite failure of issue of the first taker, and those which fix the time when the devise over is to take effect within a particular period, to occur within a life or lives in being, and twenty-one years after. For example, if land be given to one in fee, and if he die without issue, or for want of issue, or without leaving issue, then over to another in fee, the estate of the first taker is a fee tail, which will pass to his descendants *ad infinitum,* as tenants in tail. But if the contingency be, if the first taker die without issue, before arriving at twenty-one, or if he die unmarried and without issue, or on similar forms of expression, shewing that the donor contemplated the necessary occurrence of the contingency within a fixed and limited

period, the estate of the first taker is a fee conditional, liable to defeasance by the happening of the event. Brown *vs.* Polls, *Cro. Jac.* 591; Eichelberger *vs.* Barnitz, 9 *W.* 447; Langley *vs.* Heald, 7 *W. & S.* 96. In our case, the language used indicates unerringly, the grantor had not in view a remote failure of issue upon which the estate was to go over, but an immediate defect, consequent on the death of all Barbara's issue before reaching their majority; an event which must necessarily take place, if at all, within twenty-one years after her own decease. This shews the words "issue or issues" were here used in their more natural signification of "children," and not as indicating the remote descendants of a long continued line. The clause may, therefore, with propriety be read, should she not leave any child or children, who shall live to the age of twenty-one years, her estate shall be wholly ended and determined; a provision which could be accepted but as a condition subsequent, upon which the continuance of the estate depended.

From what has been said, it results, that Barbara took a fee simple, dependent on the condition of leaving children, who should live to attain full age. Having failed in this, her estate has determined by her death, and a fee vested in the right heirs of the grantor. The judgment pronounced below is consequently right.

Judgment affirmed.