## RICHARDSON *v.* PALMER.

Possession or a right to possession of the *locus in quo*, is essential to enable the plaintiff to maintain trespass *quare clausum.*

All the parts of a deed are to be considered and construed together. Every part should, if possible, be made to take effect, and every word to operate, if by law it may, according to the intention of the parties. If a deed, or any portion of it, cannot operate in one form, it shall operate in that which by law will effectuate the intention of the parties; and every deed is to be construed with reference to the actual rightful state of the property conveyed by it, at the time of its execution.

Where one conveyed a farm, describing it by metes and bounds, with full covenants of warranty, but the deed contained the following reservations or exceptions: "Reserving to the public the use of the road through said farm; also, reserving to the White Mountains Railroad the road-

way for said road, as laid out by the railroad commissioners; and also reserving to myself the damages appraised for said railroad way by the commissioners and selectmen"—

*Held*, That the intention of the grantor must have been to convey to the grantee the lands over which the public highway and railroad had been laid out and established, subject only to the easement or right of way of the public in the highway and of the railroad corporation in the railroad way as laid out by the railroad commissioners, reserving to himself the unpaid damages awarded by the commissioners and selectmen for the laying out of the railroad way.

TRESPASS. Writ dated March 27, 1857. The declaration alleged that the defendants, on the 16th day of March, 1855, and on divers days and times between that date and the purchase of the plaintiff's writ, with force and arms, broke and entered the plaintiff's close, situate in Lisbon, in said county, being that part of the Guy Young farm, in said Lisbon, reserved to himself in his deed of said farm to Joel Streeter, and with engines and cars dug up and subverted the soil of said close, and occupied the same for railroad purposes, having no leave or license so to do, &c. Damages claimed, $150.

Plea, the general issue, with a brief statement, that on the 10th of December, 1850, the plaintiff licensed the White Mountains Railroad, a corporation duly established, to enter upon the *locus in quo*, and construct and operate thereon their railroad; that in pursuance of said license said corporation thereafter entered upon said premises and completed their road thereon, on the 30th day of July, 1853, ever since which period they had operated their railroad over the same, as they lawfully might under the plaintiff's said license; and that the defendants, as the agents and servants of said corporation, had been employed by them in operating their road over said premises, and had done nothing not required and necessary to be done in thus operating said railroad, which were the acts complained of by the plaintiff, &c.

Also, that during the period mentioned in the declaration, the White Mountains Railroad was a corporation duly established by law, and authorized to operate their railroad, which had been previously located and constructed thereon, over and across the *locus in quo*, under the provisions of their charter; that the defendants were, during the same period, the servants and agents of the corporation, lawfully and properly employed in running their road, agreeably to their charter, and the acts complained of in the declaration were done by them while thus lawfully employed, and in no other way, &c., &c.

The plaintiff introduced a warranty deed of the Guy Young farm, in Lisbon, to himself, from George Amy, dated and acknowledged October 17, 1848, and recorded the next day; and proved that he entered into the same soon after the date of this conveyance, and continued to occupy it until 1852, when he sold it to Joel Streeter, who had since been in the occupation of said farm.

He then introduced a notice from himself to the White Mountains Railroad and the defendants, dated January 13, 1857, and served upon the railroad January 14, 1857, and upon the defendants January 15, 1857, requesting them not to run their cars over the *locus in quo*, describing it as reserved in his deed to Streeter.

He next introduced the deposition of David G. Goodall, who stated among other things that the defendants had been employed during the last two or three years in running the trains over the White Mountains Railroad, as superintendent, conductor and engineer; that he acted as agent and director of the White Mountains Railroad from 1851 to 1854; that he made an arrangement with the plaintiff by which said railroad was authorized to enter upon the *locus in quo*, and construct their road over the same, without first paying the plaintiff the damages assessed to him by the railroad commissioners and selectmen of Lisbon; that the road across the premises in contro-

Richardson *v.* Palmer.

versy was commenced in 1851, and completed for use in July, 1853; that the distance was about eighty rods, and the cost at the rate of $10,000 or $12,000 per mile; that after the arrangement made with the plaintiff by himself for the corporation, the plaintiff did not object to the construction of the road across his land, or to the running of engines and cars across the same after its completion; that before the road was completed across the plaintiff's land, he presented to the deponent an account against the railroad corporation, wherein he charged them with the amount of land damages, as appraised by the commissioners and selectmen, being $175, and with various small items, amounting in all to $196; that he paid him, for the corporation, every thing except the $175 land damages, and one of the defendants, for said corporation, afterwards paid to the plaintiff $80, in part of the land damages; that the arrangement by which the plaintiff permitted the corporation to enter upon his land and construct their road without first paying the land damages assessed, was made as a temporary expedient, with the understanding that those damages should shortly be paid.

The plaintiff next introduced the deed from himself to Joel Streeter, dated March 2, 1852, acknowledged the same day, and recorded March 17, 1852, whereby he conveyed to said Streeter the whole of the Guy Young farm, in Lisbon, describing the same by metes and bounds, with covenants of warranty, with the following exceptions or reservations, to wit: "Reserving to the public the use of the road through said farm; *also, reserving to the White Mountains Railroad the roadway for said road, as laid out by the railroad commissioners; and also reserving to myself the damages appraised for said railroad way by the commissioners and selectmen.*"

The plaintiff also put in evidence the sworn admissions of John E. Chamberlain, one of the defendants, that from March 15, 1855, to January 14, 1856, the road known as

the White Mountains Railroad, was operated by and for the benefit of himself and Robert Morse, and not for the benefit of that corporation.

It further appeared from the plaintiff's evidence, that he left the Guy Young farm immediately after his conveyance thereof to Joel Streeter, and that Streeter immediately entered into possession, and continued to own and occupy the same, under his deed from the plaintiff, to the date of the plaintiff's writ and long afterwards, and still so occupied it.

The plaintiff having rested his case, the defendants moved for a nonsuit, because the plaintiff had shown no right to maintain the action, having shown neither possession nor right to the possession of the *locus in quo;* and because, if it had not appeared that the plaintiff had parted with his interest in the land, having authorized the railroad to enter and construct their road upon the premises in controversy, without first paying the damages, his remedy was an action on the case, or assumpsit, and not an attempted revocation of the license, and trespass *quare clausum.*

The court having directed a nonsuit, the plaintiff excepted thereto, as follows :

1. Because the plaintiff did show by his deeds sufficient interest in and title to the *locus in quo* to maintain his action.

2. Because neither the White Mountains Railroad, nor any of its servants, agents or employees, had any right to pass over the *locus in quo* without paying the plaintiff his land damages.

3. Because the license set up by the defendants, as their protection and defence, was, in the first place, only a conditional license, and the condition was never complied with ; and secondly, was only a temporary arrangement, and the time during which it could protect the defendants, if at all, had elapsed before the trespasses set up in the declara-

Richardson *v.* Palmer.

tion took place; and, thirdly, if there ever was any continuing license, it had been revoked.

4. Because John E. Chamberlain was estopped, by his own admissions, from justifying the said trespasses under the White Mountains Railroad.

*C. W. & E. D. Rand*, for the plaintiff.

*H. & G. A. Bingham*, and *H. Hibbard*, for the defendants.

FOWLER, J. The gist of the action of trespass *quare clausum* being an injury done to the plaintiff's possession of real property, it needs no argument or citation of authorities to show that, in order to maintain it, the plaintiff must either have, or be entitled to have, possession of the property in which the trespass is alleged to have been committed. In the present case, the defendants contend that the plaintiff had neither possession, or any right to the possession of the *locus in quo;* having parted not only with the possession, but with all right of property therein, by his conveyance thereof to Joel Streeter, on the second day of March, 1852, long before the commission of the trespasses set forth in the declaration contained in his writ.

The first question, then, which presents itself for our consideration relates to the construction to be given to the second reservation or exception in the deed from the plaintiff to Joel Streeter. By that deed, he conveyed to Streeter the whole of the Guy Young farm, in Lisbon, describing it by metes and bounds, and inserting full covenants of warranty, but with the following exceptions or reservations: "Reserving to the public the use of the road through said farm; also reserving to the White Mountains Railroad the roadway for said road, as laid out by the Railroad Commissioners; and also reserving to myself the damages appraised for said railroad way by the commissioners and selectmen."

The well recognized rules laid down for the construction of deeds, justly said to be founded in law, reason and common sense, require that the whole deed shall be considered and construed together, and not any particular portion of it by itself; that every part shall, if possible, be made to take effect, and every word to operate; that it shall operate according to the intention of the parties, if by law it may; that, if it cannot operate in one form, it shall operate in that which by law will effectuate the intention; that, if it may enure in different ways, the person to whom it is made shall have his election which way to take it, and he may take it in the way which shall be most for his advantage; and that every deed, especially a deed poll, is always, in the last resort, to be construed most strongly against the grantor. So, doubtful words and provisions in a deed poll, when other grounds of construction fail, are to be taken most strongly against the grantor, and exceptions most favorably to the grantee; and if they be not set down and described with certainty, the grantee shall have the benefit of the defect. 4 Cru. Dig., tit. 32, ch. 23; Shep. Touch. 82, 83; *Goodtitle* v. *Bailey*, Cowp. 600; *Adams* v. *Frothingham*, 3 Mass. 352; *Worthington* v. *Hillyer*, 4 Mass. 196; *Watson* v. *Boylston*, 5 Mass. 411; *Pray* v. *Briggs*, 2 Conn. (Cond. R.) 98; *Jackson* v. *Hudson*, 3 Johns. 375; *Jackson* v. *Gardner*, 8 Johns. 394; *Jackson* v. *Blodgett*, 16 Johns. 172; *Bryan* v. *Bradley*, 16 Conn. 474; *Means* v. *Presbyterian Church*, 3 Watts & Serg. 303; *Thomas* v. *Hatch*, 3 Sum. 170; *Moore* v. *Griffin*, 9 Shep. 350; *Cocheco Company* v. *Whittier*, 10 N. H. 305; *Clough* v. *Bowman*, 15 N. H. 504; *Emerson* v. *White*, 29 N. H. (9 Fost.) 492.

Another well established rule is, that a deed is to be construed with reference to the actual rightful state of the property at the time of its execution. *Duncklee* v. *Wilton Railroad*, 24 N. H. (4 Fost.) 489, and authorities.

Applying these various rules to the case before us, what was the intention of the parties in the execution of the

deed from the plaintiff to Streeter, and how are the deed and its exceptions or reservations to be construed, so as, if possible, to effectuate and carry out that intention ?

At the date of that conveyance, the public had an easement or right of way in a highway established across the Guy Young farm ; the White Mountains Railroad had at least an inchoate easement, or right of way for a roadway, of the necessary width for railroad purposes, across it, for the distance of about eighty rods, acquired by the laying out of their railroad through it by the railroad commissioners, the appraisal of damages therefor by said commissioners and the selectmen of Lisbon, and the license of the plaintiff to them to enter upon and use the way thus laid out, for constructing and operating their railroad thereon, without first paying or tendering the appraised damages ; and the plaintiff had a claim against the White Mountains Railroad for the payment of the damages appraised to him for this easement, which he had charged to the corporation in account, as a matter of indebtedness from them to himself. Under these circumstances the plaintiff conveyed the whole farm, by metes and bounds, to Streeter, with full covenants of warranty, subject only to the exceptions or reservations before stated. He first excepted from his grant the right or easement of the public in the existing highway. Of this there can be no doubt. Such is the express language. It is conceded by the plaintiff's counsel, and distinctly settled in *Leavitt* v. *Towle*, 8 N. H. 96. This was done by the words, " reserving to the public the use of the road through said farm." Then follows the phraseology of the second exception : " Also reserving to the White Mountains Railroad the roadway for said road, as laid out by the railroad commissioners." What did the parties intend by these words ? Did they mean thereby to except from the grant the fee in the soil over which a way for the use of the White Mountains Railroad had been laid out by the commission-

ers, or only the easement, inchoate and contingent, if it may be so considered, which the railroad corporation had acquired by the laying out, in the land thereby set apart as the roadway for their railroad—the right to use the railroad as established by the commissioners through said farm, in the manner and for the purposes to which it had been appropriated and set apart by the action of the commissioners.

We confess that, notwithstanding the able and ingenious argument of the plaintiff's counsel, we are unable to perceive any substantial difference between this language and that of the preceding exception or reservation ; and it seems to us quite clear, that, while the purpose and effect of the exception in regard to the highway are admitted to be, and manifestly are, to make the grant subject only to the easement or right of way of the public in the land over which the highway had been established, while the land itself—the fee in the soil of the highway—passed to the grantee, the design and operation of the exception in regard to the roadway of the White Mountains Railroad can only be holden to be to subject the grant to the easement or right of user of that corporation, in the lands laid out for their roadway, while the lands themselves—the fee in the soil over which the railroad had been established — subject to that right or easement, passed to Streeter under the deed.

In *Leavitt* v. *Towle*, 8 N. H. 96, the deed, after describing the land granted, by metes and bounds, contained the following words : " Including all within the above mentioned bounds, excepting a road laid out through said premises by committee from court." It was holden that this exception embraced only the easement or right of the public in the road, and not the soil, so that the soil of the highway passed to the grantee by the deed, subject to the easement. The language in the reservation or exception now under consideration does not seem to us to differ ma-

terially from that employed in the conveyance interpreted in *Leavitt* v. *Towle.* The exception here is of the roadway of the White Mountains Railroad, for their road, as laid out by the railroad commissioners ; that is, of the easement, or right of way for that railroad, as laid out by the commissioners. It is not easy to conjecture what language could have been used by the grantor more fit and appropriate than he has employed, had he designed to except from his grant, agreeably to the decision in *Leavitt* v. *Towle,* merely the easement or right of way which the White Mountains Railroad had acquired by the laying out of their railroad by the commissioners through the farm conveyed to Streeter. The language employed is quite inconsistent with an intention to except the land over which the railroad had been laid out. The thing excepted is "the roadway for the road" of the White Mountains Railroad corporation, as laid out by the railroad commissioners ; that is, most clearly, as it seems to us, the right of way for the railroad of said corporation, as thus laid out, and not the land over which it had been laid out. Such is the most common and obvious sense of the language used, and it admits of no other. *Newmarket Manufacturing Company* v. *Pendergast,* 24 N. H. (4 Fost.) 66 ; *Blake* v. *Rich,* 34 N. H. 282.

It has been said that this construction renders the subsequent reservation or exception of the damages appraised for said railroad way, superfluous or nonsensical. It does not so appear to us. It is assumed by the plaintiff's counsel, and not controverted, that the parties to the conveyance were farmers, unacquainted with the nice technicalities of the law, and being such, if, as we suppose, the plaintiff designed to convey to Streeter, by a warranty deed, the Guy Young farm, just as it then was, subject to the incumbrance of a public highway and of the White Mountains railroad, as both had been laid out through it, it was extremely natural for them, as it seems to us, after

excepting from the grant the public highway and the easement of the railroad, to add, that notwithstanding the plaintiff had granted the land over which the railroad had been laid out by the railroad commissioners, he had not granted, and did not intend thereby to grant, the damages which had been awarded to him for the railroad easement issuing out of that land, but not yet paid; but that those damages also were excepted from the grant. The fact that it was thought proper expressly to reserve to the plaintiff this claim for unpaid damages, is plenary and conclusive evidence to our mind that the parties did not intend to except, and did not understand they had excepted from the grant, the land over which the railroad had been laid out; for if they had so intended, and so understood, they must have known, however ignorant of legal technicalities, that the sale and conveyance of the rest of the farm could not by possibility affect the claim for those damages. But, the plaintiff having granted the soil over which the railroad had been laid out, subject to the easement or right of way of the railroad, both parties might naturally enough think it necessary, or at least proper, to insert their understanding or agreement that the grantor, although he had parted with all his interest in the land over which the railroad had been established, was yet to retain his claim against the railroad corporation for the unpaid damages awarded to him for the laying out of the road. They might, perhaps, in their ignorance of the law, have supposed that, unless specially excepted from the grant, this claim for damages awarded, but not yet paid, for an easement in the land conveyed to Streeter, would pass to him with the land itself. Had the land out of which the claim for damages arose been excepted from the grant, and retained by the plaintiff, the most ignorant could hardly have suspected any such result; and had the parties understood that the plaintiff retained the soil of the railroad, it is impossible for us to conceive why the

claim for damages awarded for an easement issuing out of that land, should have been specially excepted from the grant.

The result at which we arrive, therefore, upon a careful examination of the deed, and a deliberate consideration of all the circumstances under which it was executed, is that the plaintiff must have intended to sell, and Streeter to purchase, the Guy Young farm, just as it was at the date of the conveyance, subject to the incumbrance of the public highway and of the White Mountains Railroad, as laid out through it—the plaintiff retaining his claim for the unpaid damages awarded for the laying out of the railroad; and that proper and apt words were used in the deed of conveyance to carry out that intention, without resorting to any doubtful construction, or giving to the grantee any advantage from the imperfection or uncertainty of the phraseology employed ; the words expressing a reservation being made to operate, as only under the circumstances they can operate, as an exception to the general terms of the grant which precedes them.

It has been forcibly urged, as a reason for the construction of the reservation or exception for which the plaintiff contends, that he must have intended, when he retained to himself the claim for unpaid land damages, to have retained also the land for an easement in which they were awarded, as the only efficient means of enforcing their payment. It is a sufficient answer to this position, that the case finds the plaintiff to have voluntarily authorized the railroad to enter upon his land, and construct and operate their road over it, without first paying the damages awarded to him, thus expressly waiving a statute provision intended for his effectual protection; and further, that the plaintiff charged the railroad in account with those damages, in connection with other claims, and presented the same for adjustment to the agent of the corporation. These facts have a strong tendency to show

what is probably the truth of the matter: that, at the time of the laying out and construction of the railroad, and of the sale of his farm, the plaintiff considered his claim for damages against the railroad perfectly good and available, without reference to any power of enforcing it by means of prosecutions for trespass, or an injunction to prevent the corporation from running their engines and cars over this land. Hence the exceeding improbability, aside from the language used in the deed, that the parties could have intended to reserve to the plaintiff the soil where the railroad had been laid out, for any such purpose.

With these views upon the first question presented by the positions and arguments of the parties, as we are of opinion that the plaintiff had no possession of, or right of property in, the *locus in quo*, and for that reason could not sustain his action, it is wholly unnecessary to consider or discuss the other questions raised by the case transferred. The ruling of the court on trial having been correct, the exceptions taken thereto are overruled, and there must be judgment for the defendants on the nonsuit ordered.

*Judgment on nonsuit.*